UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GYRODATA INC.,                          :
                                        :
    Plaintiff,                          :
                                        :
    v.                                  :    CASE NO. 3:10MC93(RNC)
                                        :
GYRO TECHNOLOGIES, INC., ET AL.,        :
                                        :
    Defendants.                         :

## RULING ON MOTION TO COMPEL

Pending before the court is the plaintiff's motion to compel respondent Atlantic Inertial Systems, Inc. ("AIS") to comply with a subpoena. Oral argument was held on November 2, 2010.

The factual background to this motion is both complex and unusual. AIS is a corporation located in Cheshire, Connecticut. The subpoena at issue was issued by this court in connection with a patent infringement case brought by the plaintiff against certain of its competitors in the Southern District of Texas. AIS is not a party to the Texas litigation.[1] The plaintiff has, however, sued AIS on unrelated claims in a second lawsuit, pending in the Central District of California.

Both the Texas court and the California court entered protective orders barring parties from sharing certain confidential information with others. The plaintiff issued the subpoena to AIS because of suspicions that AIS and one of the

---

[1]According to the plaintiff, the Texas lawsuit was still pending when the subpoena issued; it has since settled.

Texas defendants might have exchanged confidential information produced by plaintiff. If such communications occurred, plaintiff argues, it would be a violation of one or the other protective order. In addition, because AIS has obtained a great deal of information about plaintiff's product development and financial records, the sharing of that information with plaintiff's competitors, the Texas defendants, would be devastating to the plaintiff's business. The plaintiff concedes that, because the Texas case has since settled, this discovery has no bearing on the merits of that action. However, the plaintiff maintains that the subpoena seeks information relevant to a possible sanctions motion either there or in California, if it reveals a violation of a protective order.

Plaintiff's argument is based entirely upon a single email produced by one of the Texas defendants during litigation. According to the plaintiff, this email raises the specter that someone at AIS secretly funneled confidential documents produced by plaintiff in the California litigation to Nick Wallis, the principal of one of the Texas defendants, its competitor.[2]

The email, dated July 20, 2009, appears on its face to be

---

[2] The allegedly suspicious email is attached as Exhibit 3 to the Declaration of Thomas M. Fulkerson in Support of Plaintiff's Motion to Compel, doc. #9.

from "Gyrodata" to Wallis.[3]  However, after much discussion prior to and at oral argument, the parties are in agreement the email was not sent from Gyrodata to Wallis.  Instead, it was sent from an AIS internal email address, GyrodataBCC@AtlanticInertial.com, which was programmed to use the "display name" name of "Gyrodata."[4]  The subpoena seeks production of all documents "related to" this GyrodataBCC email address, including all emails sent to or received at the address.

AIS has explained, and plaintiff does not dispute, that the GyrodataBCC email address was a "drop box" created by AIS's information technology staff to capture emails that related to the pending California litigation with Gyrodata.  Concerned that its employees might be in communication with its litigation opponent, the plaintiff, AIS set up a filtering system by which any incoming or outgoing email that contained certain words[5] would be copied to the drop box without the knowledge of either the sender or the recipient.

---

[3]Wallis later forwarded the email to someone else, or possibly himself.  The plaintiff's concern, however, is with the July 20, 2009 Gyrodata to Wallis email, not the later July 26, 2009 forwarded email.

[4]All of this is consistent with what appears to be a metadata printout produced with the email, which appears on the second page of plaintiff's Exhibit 3.

[5]A list of the filter terms, as well as an explanation of how the drop box worked, are provided in an affidavit submitted by AIS's information technology director, Jeffrey Lane, in support of AIS's opposition brief (doc. #13).

The allegedly suspicious July 20, 2009 email relied on by the plaintiff is actually a "read receipt." As explained by AIS, Wallis sent an email to somebody at AIS and, because it included one of the filter terms, a copy of that underlying email was deposited in the drop box. Then, on July 20, 2009, somebody at AIS opened the email from Wallis that had been stored in the drop box, triggering the creation of a read receipt to Wallis.[6] The read receipt– i.e. the document produced during discovery in the Texas case– has as its subject line "Read: AIS Meeting Follow-up . . . " and says "[y]our message was read on Monday, July 20, 2009 . . ." The text of Wallis's original message is not reproduced in the read receipt; only the original subject line is reproduced. The printout indicates that there was some kind of attachment titled "ATT00001.txt," but the plaintiff says no attachment was produced by the Texas defendants.[7]

AIS objects to the subpoena on a number of grounds. It notes that the filter terms used for the drop box were so broad as to capture many internal emails that actually had nothing to do with the litigation. It also captured communications that are protected by attorney-client privilege and/or work product,

---

[6]The court's understanding is that Wallis, when he sent his original note, would have set the email to require such a read receipt upon opening by the recipient.

[7]AIS's counsel speculated at oral argument, but could not be certain, that the attachment consisted merely of the metadata that appears on the second page of plaintiff's exhibit.

4

including communications with counsel. AIS also argues that responding to the subpoena would subject it to a significant burden. But its primary argument is that the subpoena simply does not seek relevant information. It contends that the email the plaintiff relies on does not prove, or even suggest, any untoward conduct, and even if communications with Wallis captured by the drop box could have some arguable relevance, the over 1500 other emails in the box have none.

The court pauses to emphasize that, while AIS and the Texas defendants were each bound by protective orders that prohibited them from sharing information produced by Gyrodata in litigation, the mere fact that they communicated with each other is far from suspicious: AIS is a supplier in the field, and AIS freely admits that it communicated with Wallis about possible purchases by his company.

Indeed, after the plaintiff filed this motion, AIS attempted to resolve the dispute by permitting inspection of all emails to and from Wallis that were captured in the drop box. The plaintiff concedes that it reviewed those emails and found no support for its suspicion that improper communications occurred.[8]

---

[8] At oral argument, counsel for AIS also produced to the plaintiff's attorney an email from Wallis that AIS's counsel believes was the underlying email that generated the read receipt. The court understands this email to have been one of the documents previously inspected. Asked about the significance of that email, plaintiff's counsel did not argue that it was in any way suspicious. He responded that he could not evaluate that email without seeing all the emails in the chain. However, he declined AIS's offer to re-inspect all of the Wallis communications

Nonetheless, the plaintiff persists in seeking production of all emails from the GyrodataBCC email address.  It still relies solely on the single read receipt email discussed above, although it does not dispute AIS's explanation of how that read receipt was generated.  Its position appears to be simply that it does not trust AIS, and now that its suspicions have been aroused, it is entitled to see all the emails in the drop box.  The court is unpersuaded.  First, the only thing "suspicious" about the Wallis email was that plaintiff did not know exactly what it was and where it originated.  AIS has provided a reasonable, and undisputed, explanation of why the email is addressed from "Gyrodata" to Wallis and why an internal AIS email address appeared in the metadata.

Second, to the extent that the email did raise suspicions, those suspicions were only as to whether Wallis had improper communications with AIS.  AIS's counsel, as an officer of the court, has represented that he produced for inspection all emails to and from Wallis that were in the drop box.  Plaintiff admits that none of those emails showed any improper communications.  Plaintiff now wants to see all the other emails in the drop box– i.e. all the emails that were not to or from Wallis.

"A party seeking discovery has the initial burden such that some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a

---

previously inspected.

6

variety of information which does not reasonably bear upon the issues in the case." <u>Vertrue Inc. v. Meshkin</u>, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 55168 (D. Conn. Aug. 4, 2006)(internal citations and quotation marks omitted). Although the rules favor liberal discovery, the Texas case is settled and closed. The plaintiff concedes that the only possible relevance of the production request in its subpoena is to suss out a possible violation of a protective order. This is entirely too speculative. The court sees no basis for further inquiry into the contents of the drop box.

For the foregoing reasons, the plaintiff's Motion to Compel, doc. #1, is denied. This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Hartford, Connecticut this 12th day of November, 2010.

_____/s/_____
                Donna F. Martinez
                United States Magistrate Judge